NO. 25-1156

(oral argument not yet scheduled)

IN THE

# UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

HAMBURG SÜDAMERIKANISCHE DAMPFSCHIFFFAHRTS-GESELLSCHAFT A/S & Co. KG; HAMBURG SUD NORTH AMERICA, INC.; MAERSK A/S, MAERSK AGENCY USA, INC.,

*Petitioners,*

v.

FEDERAL MARITIME COMMISSION,

*Respondent,*

&

OJ COMMERCE LLC,

*Intervenor for Respondent.*

Petition for Review of an Order of the Federal Maritime Commission (21-11)

# PETITIONERS' FINAL REPLY BRIEF

Bryan Killian
Brendan J. Anderson
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C. 20004
T: 202-739-3000
bryan.killian@morganlewis.com

# CONTENTS

Page

Contents ..... ii

Authorities ..... iv

Glossary ..... viii

Summary of Argument ..... 1

Argument ..... 6

I. FMC's adjudication violated Article III and the Seventh Amendment. ..... 6

- A. HSDG's Seventh Amendment challenge is preserved. ..... 6
- B. Punitive reparations require Article III adjudication before a jury ..... 7
- C. FMC adjudicated private rights. ..... 9
- D. The "public rights" exception does not apply ..... 11
- E. A Section 41309 does not solve the Seventh Amendment problems. ..... 14

II. The Shipping Act prohibits awarding reparations for a breach of a service contract ..... 17

III. FMC's liability determinations are arbitrary, capricious, and contrary to law. ..... 19

- A. HSDG did not "unreasonably refuse to deal or negotiate" in the years at issue ..... 20
- B. HSDG did not unlawfully retaliate against OJC. ..... 23
  - 1. OJC did not engage in protected activity. ..... 23
  - 2. HSDG did not fail to provide "cargo space accommodations when available." ..... 25

IV. FMC's reparations award was arbitrary, capricious, and contrary to law. ..... 26

A. OJC did not carry its burden. .......... 26

B. FMC arbitrarily held that OJC was entitled to lost profits based on a hypothetical 2021–2022 service contract with a 400 FFE minimum volume.......... 28

C. Punitive reparations are arbitrary and capricious. .......... 29

Conclusion .......... 31

Certificate of Compliance .......... 32

# AUTHORITIES

**Page(s)**

**Cases**

*Aerotec International, Inc. v. Honeywell International, Inc.*
836 F.3d 1171 (9th Cir. 2016) .......... 21

*ANR Storage Co. v. FERC*,
904 F.3d 1020 (D.C. Cir. 2018) .......... 27

*AT&T, Inc. v. FCC*,
149 F.4th 491 (5th Cir. 2025) .......... 13

*Atlas Roofing Co. v. OSHA*,
430 U.S. 442 (1977) .......... 12, 13

*Axalta Coating Systems v. FAA*,
144 F.4th 467 (3d Cir. 2025) .......... 13

*Bigelow v. RKO Pictures, Inc.*,
327 U.S. 251 (1946) .......... 28

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 559 (1996) .......... 8

*California Shipping Line, Inc. v. Yangming Marine Transport Corp.*,
1990 WL 427466 .......... 27

*Carr v. Saul*,
593 U.S. 83 (2021) .......... 7

*FMC v. S.C. State Ports Auth.*,
535 U.S. 743 (2002) .......... 16, 17

*Freytag v. Comm'r*,
501 U.S. 868 (1991) .......... 6

*George v. Leavitt*,
407 F.3d 405 (D.C. Cir. 2005) .......... 24

*Golden v. Management & Training Corp.*,
266 F. Supp. 3d 277 (D.D.C. 2017) .......... 24

*Hewitt v. New York, N. H. & H. R. Co.*,
284 N.Y. 117 (1940) .......... 10

*Kuretski v. Comm'r*,
755 F.3d 929 (D.C. Cir. 2014) .......... 6

*Lake Shore & M.S. Ry. Co. v. Prentice*,
147 U.S. 101 (1893) .......... 7

*MAVL Capital Inc. v. Marine Transport Logistics, Inc.*,
No. 16-16, 2022 WL 2209421 (FMC June 10, 2022) .......... 26

*Meeker v. Lehigh Valley R. Co.*,
236 U.S. 412 (1915) .......... 15

*MSC Mediterranean Shipping Co. S.A. v. FMC*,
141 F.4th 222 (2025) .......... 19

*MSC Mediterranean Shipping Company S.A. v. Federal Maritime Commission*,
2026 WL 92421 .......... 6, 19

*N.Y. v. Meta Platforms, Inc.*,
66 F.4th 288 (D.C. Cir. 2023) .......... 20

*New Orleans Stevedoring Co. v. Board of Commissioners of the Port of New Orleans*,
2002 WL 33836158 (FMC 2022) .......... 21, 22

*Ocean Steam Navigation Co. v. Stranahan*,
214 U.S. 320 (1909) .......... 11, 12

*Ortega v. Off. of the Comptroller of the Currency*,
155 F.4th 394 (5th Cir. 2025) .......... 13, 14

*Pac. Mut. Life Ins. Co. v. Haslip*,
499 U.S. 1 (1991) .......... 7

*SEC v. Jarkesy*,
603 U.S. 109 (2024) .......... 7, 8, 9, 10, 11, 12

*Sprint Corp. v. FCC*,
151 F.4th 347 (D.C. Cir. 2025) .......... 14, 15, 16

*Stern v. Marshall*,
564 U.S. 462 (2011) .......... 9

*Sun Valley Orchards v. U.S. Dept. of Lab.*,
148 F.4th 121 (3d Cir. 2025) .......... 9, 12

*United States v. Fair*,
699 F.3d 508 (D.C. Cir. 2012) .......... 28

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004) .......... 20

*York Co. v. Cent. R.R.*,
70 U.S. 107 (1865) .......... 9, 10

**Statutes**

46 U.S.C.
§ 40102(21) .......... 25
§ 40501(a) .......... 23
§ 40502(a) .......... 22
§ 40502(f) .......... 10, 11, 17, 18, 19
§ 41104(a)(3) (2021) .......... 25
§ 41304 .......... 16
§ 41305 (2021) .......... 8, 28
§ 41305(c) .......... 29
§ 41309 .......... 14

Pub. L. No. 59-337, § 4, 34 Stat. 584, 589 (1906) .................................... 16

Pub. L. No. 64-260, § 23, 39 Stat. 728, 736 (1916) .................................. 16

**Other Authorities**

46 C.F.R.
§ 502.204 ........................................................................................ 27
§ 502.603(b) .................................................................................. 8, 29

81 Fed. Reg. 93831 .......................................................................... 27

Black's Law Dictionary (12th ed. 2024) ................................................... 8

Websters New Universal Dictionary 512 (unabr. 1996) .......................... 20

Websters New Universal Dictionary 1622 (unabr. 1996) ........................ 20

# GLOSSARY

| | |
|---|---|
| ALJ Dec. | the Initial Decision, dated June 7, 2023, signed by Chief Administrative Law Judge Erin M. Worth |
| "CX#" | citation of Claimant's appendix in the agency proceedings |
| Dec. | the Federal Maritime Commission's Order Affirming the Initial Decision, dated August 27, 2024 |
| FFE | forty-foot equivalent |
| FMC | Federal Maritime Commission |
| HSDG | Petitioners |
| MQC | Minimum Quantity Commitment |
| OJC | Intervenor OJ Commerce, LLC, |
| "RX#" | citation of Respondent's appendix in the agency proceedings |

# SUMMARY OF ARGUMENT

The FMC's order in this case is unconstitutional, arbitrary, capricious and contrary to the Shipping Act on a number of grounds, any one of which requires reversal. In a desire to mete out rough justice and send a message to the ocean carrier community following the COVID-19 pandemic, the FMC's brief fully embraces these flaws and attempts to justify the agency's overreach.

As only an Article III court with a jury can award punitive damages, so can only an Article III court with a jury award punitive reparations. For punitive reparations are punitive damages in all but name. FMC's insistence that punitive reparations are compensatory damages is untenable. In this case, the punitive reparations were double OJC's actual injury and calculated using FMC's standard for enhanced civil penalties. That is the definition of punitive.

This private commercial dispute, based on common-law principles pertaining to breach of contract and common carriers, clearly concerns private rights. FMC's contrary arguments are erroneously assume that the Seventh Amendment requires a jury only when an administrative claim exactly matches a common-law claim. Congress and agencies can't add trivial elements to common-law claims and thereby nullify the

Seventh Amendment. The Seventh Amendment test is concerned with substance, not technicalities, and applies when a claim tracks the common law, such as when it targets the same conduct as a common-law claim or when it trades on common-law concepts. Here, OJC's Shipping Act claims target the exact same conduct as a common-law breach-of-contract claims and a common-law claim charging a common carrier with refusing to provide service.

Nor does this case fall into the public-rights exception. FMC claims otherwise, because the case arises out of foreign commerce and arises under a statutory scheme. Those generalities are distractions, and FMC fundamentally doesn't address *this case*. It may be that FMC can constitutionally adjudicate *other* Shipping Act reparations claims. But OJC's Shipping Act claims mimic common-law claims and stem from a private commercial dispute; OJC's claims do not line up with any recognized application of the public rights exception.

FMC's fallback argument—that a hypothetical future collection proceeding preserves HSDG's Seventh Amendment rights—also fails because these proceedings already determined legal rights or obligations. FMC relies on cases where an agency's determination had no independent legal force and effect unless and until an enforcement action was

brought in district court. The Shipping Act doesn't work like that. FMC's implication that its adjudication was merely advisory is belied by the extensive nature of these administrative proceedings.

On the merits, FMC's order is arbitrary, capricious, and contrary to the Shipping Act as to remedy, liability, and damages. As to remedy, FMC does not directly confront HSDG's argument that the Act expressly prohibits awarding breach-of-contract remedies. FMC instead attacks an argument HSDG is not making on appeal: that FMC lacked jurisdiction. Whatever the breadth of FMC's jurisdiction to hear OJC's claims, the Shipping Act limitedly bars FMC from awarding OJC breach-of-contract remedy for HSDG's failure to meet all of its contractual obligations under the 2020–2021 Service Contract.

On liability, FMC misinterprets the Shipping Act. HSDG's imperfect performance of the 2020–2021 service contract, and HSDG's decision not to sign a 2021–2022 service contract during the height of the pandemic, were neither refusals to deal nor retaliation for OJC's unfounded threat to report a breach of contract to FMC. HSDG undisputedly dealt with OJC and carried a substantial portion of OJC's cargo *throughout the entire period*, and, therefore, did not unreasonably refuse to deal or negotiate with OJC. FMC's contention otherwise is based on a reading of the

statutory text that would turn virtually any breach of a service contract into a refusal to deal—a pure administrative power grab.

FMC's retaliation determination is also arbitrary, capricious and contrary to law. OJC did not engage in protected activity when it added a baseless threat to file a complaint with the FMC into a demand letter alleging a breach of contract (which conduct, ultimately, FMC did not find even to be a breach). And HSDG's failure to enter a service contract in 2021–2022 was not a denial of cargo space accommodations—because HSDG continued to transport cargo for OJC. FMC's arguments contradict its prior interpretation of the retaliation provision, misconstrue HSDG's arguments, and fail to grapple with the distinction between a service contract and the provision of particular cargo space accommodations.

Finally, on damages, FMC acted arbitrarily, capriciously, and contrary to law both in concluding that OJC met its evidentiary burden and in calculating the punitive reparations. FMC doesn't dispute that OJC's pivotal spreadsheet, on which the entire damages award hangs, is inadmissible as a business record in court, and FMC agrees that the spreadsheet is rife with errors. Yet via internally inconsistent reasoning, FMC

maintains that the spreadsheet is just reliable enough to enable FMC to estimate OJC's damages.

FMC's calculation of the reparations is similarly flawed. FMC's speculation that the parties would have entered a new service contract with double the MQC from the previous year is untethered from the record. And FMC fails to justify its decision to double the reparations at all, let alone to the maximum possible number.

# ARGUMENT

## I. FMC's adjudication violated Article III and the Seventh Amendment.

### A. HSDG's Seventh Amendment challenge is preserved.

FMC is wrong that HSDG had to administratively exhaust its Seventh Amendment argument.[1] FMC Br. 47.[2]

- First, exhaustion is unnecessary for structural constitutional challenges that are "neither frivolous nor disingenuous." *Kuretski v. Comm'r*, 755 F.3d 929, 936–937 (D.C. Cir. 2014); *Freytag v. Comm'r*, 501 U.S. 868, 879 (1991). FMC does not cite these precedents or contend that HSDG's claims are frivolous or disingenuous (because they aren't).
- Second, FMC fails to mention that, under its own precedents, it has advised litigants against raising constitutional claims because they "cannot be resolved by administrative agencies." *MSC Mediterranean Shipping Company S.A.*, 2026 WL 92421, at *2. Thus, FMC can hardly

1 FMC does not argue that HSDG was required to administratively exhaust its Article III objection.

2 FMC's related observation (FMC Br. 48) that a litigant can waive a jury trial has no application here. FMC never offered HSDG a jury trial. Asking for a jury trial would have been futile.

claim to be prejudiced by HSDG's waiting until now to contest the constitutionality of the administrative proceedings.

These flaws in FMC's exhaustion argument are related: defendants generally need not "raise their [constitutional] challenges in administrative proceedings" *because* agencies lack competence to resolve them. *Carr v. Saul*, 593 U.S. 83, 92 (2021). Either way, the bottom line is clear: the constitutional arguments are properly presented for this Court's review.

### B. Punitive reparations require Article III adjudication before a jury.

FMC's punitive reparations award here violates Article III and the Seventh Amendment. It violates Article III because punitive damages are a traditional common-law remedy, *see Lake Shore & M.S. Ry. Co. v. Prentice*, 147 U.S. 101, 107 (1893), which judges must supervise and independently review, *see Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 18 (1991). But that kind of independent judicial review is unavailable on a petition for review of FMC's decision. FMC's punitive reparations award violates the Seventh Amendment because punitive reparations are akin to "civil penalties," making them a legal remedy. *SEC v. Jarkesy*, 603 U.S. 109, 123 (2024).

Awarding OJC *double* its actual injury is definitionally punitive. *See* damages, Black's Law Dictionary (12th ed. 2024) (defining punitive damages as "Damages awarded in addition to actual damages … "). And FMC based this additional award on its standard for "enhanced civil penalties"—a standard resembling that which the SEC used to assess penalties in *Jarkesy*. *Compare* 46 C.F.R. § 502.603(b) ("the nature, circumstances, extent, and gravity of the violation committed"; "degree of culpability"; "history of prior offenses.") *with Jarkesy*, 603 U.S. at 123 ("whether the alleged misconduct involved fraud, deceit, manipulation, or deliberate or reckless disregard for regulatory requirements"; "whether the defendant had previously violated securities laws or regulations, or had previously committed certain crimes").

FMC nonetheless contends that it awarded OJC a "compensatory remedy." FMC Br. 52. That's untenable. The mere fact that punitive reparations award here relates to OJC's "actual injury," 46 U.S.C. § 41305 (2021), doesn't make the award compensatory. Punitive damages, too, relate to a plaintiff's actual injury insofar as punitive damages must bear "a reasonable relationship to compensatory damages." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 580 (1996).

### C. FMC adjudicated private rights.

Beyond the nature of the *remedy*, the nature of the *claim* confirms this case belonged in Article III court before a jury. *See Jarkesy*, 603 U.S. at 127. This is a private commercial dispute between private parties concerning contract performance and negotiations. It is a dispute about "private right[s]," that is, "the liability of one individual to another." *Stern v. Marshall*, 564 U.S. 462, 489 (2011) (citation omitted). The dispute targets the "same basic conduct" and uses the same "common law terms," *Jarkesy*, 603 U.S. at 125, as common-law breach-of-contract claims and common-law claims against common carriers, *See York Co. v. Cent. R.R.*, 70 U.S. 107, 112 (1865).

FMC responds that there is "no common law claim prohibiting retaliation by ocean carriers for invoking an agency's jurisdiction." FMC Br. 56. That response confuses the issue. HSDG is not arguing that *all* Shipping Act retaliation claims adjudicate private rights; HSDG argues only that *this* Shipping Act retaliation claim does—because the alleged retaliation was HSDG's failure to sign a new service contract.

FMC's arguments rest on a level-of-generality error. A claim can implicate private rights without having an "exact historical comparator." *Sun Valley Orchards v. U.S. Dept. of Lab.*, 148 F.4th 121, 128 (3d Cir.

2025). The claim's "substance" is what matters. *Jarkesy*, 603 U.S. at 134. OJC's retaliation claim against HSDG "target[s] the same basic conduct," *id.*, as common-law claims against common carriers for failure to "accept all goods offered within the course of [their] employment." *York Co.*, 70 U.S. at 112; *see also Hewitt v. New York, N. H. & H. R. Co.*, 284 N.Y. 117, 122 (1940) ("At common law, railroad carriers are under a duty to serve all persons without unjust or unreasonable advantage to any.").

FMC responds that "common-law common carriage rules" were "generally aimed at small-scale domestic interactions," not international shipping. FMC Br. 57. Even if true, this is irrelevant. The Shipping Act is steeped in these common-law concepts. When Congress referred to and regulated large international carriers as "common carriers," it brought the "common law soil" with it—including the constitutional protections appurtenant to those common-law rights. *Jarkesy*, 603 U.S. at 137.

FMC argues that its administrative proceedings are constitutional because "Congress expressly reserved traditional common law claims for breach of a service contract to 'an action in an appropriate court.'" FMC Br. 52 (quoting 46 U.S.C. § 40502(f)). But it doesn't follow that *all* Shipping Act claims lack a common-law analog or a connection to private rights. FMC insists that it can adjudicate any Shipping Act claim, even

for "refus[ing] to carry the shipper's cargo despite having service contract commitments," that raises at least one issue "peculiar to the Shipping Act." FMC Br. 25, 53. Shipping Act claims might not be traditional common-law claims, yet because they "target the same basic conduct," "employ the same terms of art, and operate pursuant to similar legal principles" as common-law claims, they still must be adjudicated by an Article III court. *Jarkesy*, 603 U.S. at 112.

FMC cannot have its cake and eat it too. If Section 40502(f) forbids FMC from adjudicating claims premised on breach of a service contract, FMC could not adjudicate OJC's claim based on the 2020–2021 Service Contract. If Section 40502(f) allows FMC to adjudicate such claims, the Seventh Amendment and Article III are implicated.

### D. The "public rights" exception does not apply.

None of FMC's attempts to fit this case within the "public rights exception" has merit. Citing *Ocean Steam Navigation Co. v. Stranahan*, 214 U.S. 320 (1909), FMC asserts that it may adjudicate OJC's claims because of "the public nature of foreign maritime commerce regulation." FMC Br. 58. But even if *some* Shipping Act claims relate to "foreign commerce" and involve public rights, it does not follow that *all* Shipping Act claims do. The Court must pay "close attention to the basis for each

asserted application of the [public rights] doctrine." *Sun Valley Orchards*, 148 F.4th at 127–128 (quotation marks omitted). Public rights do not inevitably follow if a case is related to a particular grant of congressional or executive power. In *Sun Valley Orchards*, for instance, the statute regulated "immigration," a field clearly under federal control, yet the particular "case [fell] outside the immigration exception and the tradition that shaped it." *Id.* at 130.

So too here. This case is unlike *Ocean Steam Navigation*. In that case, a customs officer penalized a steamship company for "bring[ing] to United States any alien afflicted with a loathsome or with a dangerous contagious disease." 214 U.S. at 331–332. That penalty could be imposed without an Article III court because of Congress's "plenary power" over "the exclusion of merchandise brought from foreign countries" and "the exclusion of aliens." *Id.* at 334, 336. This case, by contrast, involves no congressional power to exclude. This is a commercial dispute between private entities.

Other precedents FMC relies on are unavailing.

- The penalties OSHA awarded in *Atlas Roofing Co. v. OSHA*, 430 U.S. 442 (1977), involved safety standards that were "self-consciously novel" and resembled a "building code," *Jarkesy*, 603 U.S. at 137, and

penalties were paid to the government. The Shipping Act, however, is steeped in the common law, and all reparations are paid to private parties. Moreover, in *Atlas Roofing*, the Court explained public rights as "cases in which the Government sues in its sovereign capacity to enforce public rights created by statutes." 430 U.S. at 450. Here, by contrast, OJC brought the complaint and litigated the action.

- *Axalta Coating Systems v. FAA*, 144 F.4th 467 (3d Cir. 2025), upheld the FAA's imposition of penalties based on safety standards. *Id.* at 471. The standards were "technical prescriptions for engaging in the regulated activity" that, like those in *Atlas Roofing*, were "unknown to the common law." *Id.* at 476–77. The provisions OJC claimed HSDG violated here—for "refusal to deal" and "retaliation"—are not technical or reticulated and have common-law analogues.
- In *Ortega v. Off. of the Comptroller of the Currency*, 155 F.4th 394 (5th Cir. 2025), a bank challenged penalties assessed by the Comptroller of Currency for violating banking regulations. Critical to the court's ruling was that "[t]he OCC's enforcement action was not meant to regulate private transactions," only "the soundness" of the bank. *Id.* at 404. Here, OJC's entire action was based on private transactions. Notably, *Ortega* distinguished *AT&T, Inc. v. FCC*, 149 F.4th 491 (5th Cir.

2025), because that case (like OJC's case) involved "the common carrier doctrine" that is "deeply rooted in the common law." *Ortega*, 155 F.4th at 409.

There is no historical or precedential basis for applying the public-rights exception to OJC's claims. Holding that those particular claims must be resolved in court would not, as FMC worries, entail holding the same for *all* reparations claims. *See* FMC Br. 26. Other Shipping Act claims very well might involve public rights; for present purposes, it's enough to hold that OJC's contract-based reparations claims do not.

### E. A Section 41309 does not solve the Seventh Amendment problems.

FMC finally argues that "the Shipping Act does offer a jury trial option" to HSDG because under Section 41309 OJC "may seek enforcement in a federal district court." FMC Br. 66 (citing 46 U.S.C. § 41309). This argument is deeply flawed. Shipping Act reparations awards and enforcement proceedings are materially unlike those addressed in two cases FMC cites; both involved assessments that were not legally effective before district court litigation.

- In *Sprint Corp. v. FCC*, 151 F.4th 347, 353–354, 359, 361 (D.C. Cir. 2025), petitioners challenged the FCC's issuance of a "notice of

apparent liability" that the petitioners failed to secure customer data. Under the statutory scheme, petitioners had the option to "pay the penalty and seek direct review in a court of appeals" or "do nothing at all until it is served with a complaint, at which point it is entitled … to a trial de novo in district court." *Id.* at 354. This Court held that FCC's assessment did not violate the Seventh Amendment because the "statutory procedure at issue allowed the Carriers to obtain a jury trial before suffering any legal consequences" if they chose not to pay the penalty. *Id.* at 359. And, under the statute, "the [notice of apparent liability] has no legal effect unless and until the defendant either pays the penalty or a court enters a final judgment enforcing the Commission's order." *Id.* at 361.[3]

- *Meeker v. Lehigh Valley R. Co.*, 236 U.S. 412, 417–422, 430 (1915), held that, in a collection suit, treating a reparations order by the Interstate Commerce Commission as "prima facie evidence" did not infringe the carrier's right to a jury trial. 236 U.S. at 430. As in *Sprint*,

3 The Supreme Court has granted certiorari on this question. *See FCC v. AT&T, Inc.*, S. Ct. Case No. 25-406.

"orders for the payment of money" had no legal effect before Article III adjudicate. Pub. L. No. 59-337, § 4, 34 Stat. 584, 589 (1906).[4]

Here, FMC's order is not a mere notice of apparent liability or legally ineffective before district court litigation. It's a *finding* of *actual* liability and even includes "interest on the reparations award running from April 29, 2021." JA70 (Dec. 64). FMC's order against HSDG is immediately effective and "remains in effect for the period specified in the order or until suspended, modified, or set aside by the Commission or a court of competent jurisdiction." 46 U.S.C. § 41304; *see also FMC v. S.C. State Ports Auth.*, 535 U.S. 743, 766 (2002) (a party who did not get a reparation order set aside "would either have to make the required payment to the injured private party or stand in violation of the Commission's order."). Moreover, unlike in *Sprint*, the Shipping Act does not textually guarantee trial *de novo* in district court, and FMC cites no prior case in which a court held a jury trial *de novo* concerning a reparations award.

FMC's effort to treat its determination as a mere recommendation is contrary to the statute, the nature of this proceeding, and the Supreme

4 A century ago, the Shipping Act reparations orders also had no legal effect before enforcement. S*ee* Pub. L. No. 64-260, § 23, 39 Stat. 728, 736 (1916). That limitation no longer exists in the statute.

Court's decision in *S.C. State Ports Auth.*, 535 U.S. at 767, where the Court held that FMC's adjudication of reparations or civil penalty proceedings violated States' sovereign immunity—because "FMC administrative proceedings bear a remarkably strong resemblance to civil litigation in federal courts." FMC's adjudication cannot be both like litigation for sovereign-immunity purposes yet unlike litigation for Seventh Amendment purposes.

## II. The Shipping Act prohibits awarding reparations for a breach of a service contract.

Section 40502(f) of the Shipping Act plainly limits a shipper's remedies: "Unless the parties agree otherwise, the *exclusive remedy* for a breach of a service contract is an action in an appropriate court." 46 U.S.C. § 40502(f) (emphasis added). Here, FMC violated Section 40502(f) by awarding OJC a remedy for HSDG's breach of the 2020–2021 Service Contract—reparations based on OJC's damages from the breach. *See* JA57 (Dec. 51) ("[T]he *only* harm OJC suffered during this period due to HSDG was HSDG's failure to meet the [minimum volume]." (emphasis added)).

FMC does not directly respond to HSDG's objection. Instead, FMC wrongly contends that HSDG forfeited this argument, then attacks a strawman argument.

FMC is wrong that HSDG "failed to [challenge] the retaliation claim" on Section 40502(f) grounds. FMC Br. 22. HSDG challenged FMC's ability to award relief for "OJC's claims with respect to the performance of the Service Contract." JA456 (Exceptions at 6). Nor did HSDG merely "argue[] that the agency had failed to adhere to the *Cargo One* test." FMC Br. 24. Although HSDG did raise that argument, HSDG also contended that, based on "applicable tenets of statutory interpretation," FMC could not order reparations for breach of the 2020–2021 Service Contract because HSDG's alleged conduct, "in and of itself, is a breach of contract and not a violation of the Shipping Act." JA461 (Exceptions at 11).

On the merits, FMC misconstrues HSDG's remedial argument as an argument that FMC simply "lacks jurisdiction." FMC Br. 21–22. HSDG is not merely objecting to FMC's jurisdiction to *hear* claims alleging a breach; HSDG objects to FMC's decision to *remedy* such claims with reparations based on a breach-of-contract. That's a meaningful difference, and FMC is wrong to conflate jurisdiction and remedies. FMC Br. 26 (complaining that HSDG's remedy-focused interpretation of Section

40502(f) would "foreclose Commission consideration of every complaint-initiated case involving a service contract"). Section 40502(f) does not stop FMC from awarding remedies untethered to breach of a service contract, such as injunctive relief.

Viewing HSDG's argument rightly shows that *MSC Mediterranean Shipping Co. S.A. v. FMC*, 141 F.4th 222 (2025), is irrelevant. *MSC* involved a jurisdictional challenge (not a remedial challenge) and did not decide whether FMC can award a breach of contract remedy. *Id.* at 233–234. Also, the challenger in *MSC* did not raise an argument based on the plain meaning of Section 40502(f) but rather accepted *Cargo One*'s assumption that Section 40502(f) is purely a jurisdictional limitation. *Id.* ("assuming that *Cargo One* is consistent with the Act.").

## III. FMC's liability determinations are arbitrary, capricious, and contrary to law.

Though FMC addresses HSDG's merits arguments, OJC does not. OJC mostly tries to establish that HSDG breached its service contract and declined to enter a new one based on OJC's threat of litigation. But on appeal, HSDG argues that even if its actions were done (in part) in response to OJC's threats, its actions still did not violate the Shipping Act as a matter of law.

### A. HSDG did not "unreasonably refuse to deal or negotiate" in the years at issue.

FMC's defense of its refusal-to-deal holding rests on an erroneous premise. FMC presumes that a carrier who declines even one shipment or who declines to sign a service contract unreasonably "refuses to deal or negotiate" with a shipper—even if the carrier otherwise does regular and substantial business with the shipper. That presumption is contrary to law: neither statutory text nor FMC precedent establishes that a carrier must yield to a shipper's wants.

- As to text, to "refuse[] to deal" means to "decline"[5] "to trade or do business with"[6] someone. That is a *total* exclusion, a *complete* cessation of business. Declining one shipment, even a few, while accepting others from the customer is not a refusal to trade, do business, or deal with that customer. Declining a long-term contract while providing the customer service on a short-term basis also is not a refusal to trade, do business, negotiate, or deal with that customer.[7]

5 *refuse*, Websters New Universal Dictionary 1622 (unabr. 1996).

6 *deal*, Websters New Universal Dictionary 512 (unabr. 1996).

7 This is consistent with antitrust law, where courts regularly hold that complaints about the quality or level of service are not actionable refusals to deal. *See Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 409–10 (2004); *N.Y. v. Meta*

(footnote continued on next page)

- As to precedent, FMC interprets "refusal to deal" consistent with the term's ordinary meaning as a complete "shutting out." *New Orleans Stevedoring Co. v. Board of Commissioners of the Port of New Orleans*, 2002 WL 33836158, at *5 (FMC 2022).

Accordingly, HSDG's providing services to OJC throughout the entire period at issue means, as a matter of law, that HSDG did not refuse to deal with OJC. FMC's arguments to the contrary lack merit for both the 2020–2021 and 2021–2022 service contract terms.

For the 2020–2021 time period, FMC claims that HSDG refused to deal with OJC because HSDG failed to fulfill "the remaining 15 FFE covered by the [2020–2021] service contract." FMC Br. 33. But HSDG unquestionably dealt with OJC *before* and *after* OJC's April demand letter. *See* JA24 (Dec. 18). Indeed, HSDG met over 90% of its contractual

---

*Platforms, Inc.*, 66 F.4th 288, 306 (D.C. Cir. 2023) (rejecting claim that defendant refused "to deal with its rivals on the rivals' preferred terms"); *Aerotec International, Inc. v. Honeywell International, Inc.* 836 F.3d 1171, 1184 (9th Cir. 2016) (rejecting refusal to deal claim where "Aerotec simply did not like the business terms offered by Honeywell, especially after things began to change in 2007.").

commitment and transported for OJC both under the Service Contract and under market rates. *Id.*[8] That's not a refusal to deal.

For the 2021–2022 time period, FMC claims that HSDG refused to deal or negotiate with OJC because HSDG declined a new service contract. FMC Br. 34. However, HSDG unquestionably transported 24% of OJC's total shipments in 2021–2022. *See* JA1222 (Weiss Ex. 101 ("Containers" tab)). Again, that's not a refusal to deal.

FMC contends that providing service pursuant to *market rates* rather than *a service contract* is a refusal to deal or negotiate. *See* FMC Br. 34. Service contracts, however, are indisputably *optional*. *See* 46 U.S.C. § 40502(a); *New Orleans Stevedoring Company,* 2002 WL 33836158, at *5. They are "products" a carrier may or may not provide—a truth FMC has admitted. JA26 (Dec. 20). Tariffs, by contrast, are *mandatory*. *See*

8 FMC disagrees that HSDG "shipp[ed] 20 containers for OJC after the April Demand and before the service contract expired." FMC Br. 32. FMC insists that HSDG carried only 3 FFEs for OJC in that time because those were the only FFEs HSDG carried under the Service Contract. FMC Br. 33. FMC ignores the other 17 FFEs HSDG shipped because HSDG shipped them under other arrangements. See JA349–350 (Resp. to Respondents Undisputed Facts) (admitting this fact). But, to determine whether HSDG refused to deal with OJC, FMC cannot willfully blind itself to HSDG's actual dealings with OJC. That is arbitrary and capricious.

46 U.S.C. § 40501(a). FMC acts as if a service contract became mandatory simply because OJC preferred one. *See* FMC Br. 35. But, though HSDG was dutybound to deal with OJC—under its tariff or, as here, through short-term contracts—it was not dutybound to enter a service contract during the height of the supply-chain disruption of the COVID-19 pandemic and after failing to meet its contractual commitments under the parties' prior service contract. In those circumstances, HSDG's reasonable decision not to commit to a new contract was not, as a matter of law, an "unreasonable refusal to deal or negotiate" with OJC.

### B. HSDG did not unlawfully retaliate against OJC.

#### 1. OJC did not engage in protected activity.

OJC's threat to file a complaint with FMC was not protected activity. OJC tacked the threat onto a demand letter alleging a breach of the 2020–2021 service contract. Not only was the alleged breach facially baseless (it was based on OJC's *rejected* and *implausible* assertion that the 2020–2021 Service Contract required HSDG to provide a weekly minimum of FFEs). JA743 (CX210). But the breach OJC alleged in the letter is not even remotely something FMC could remedy (and, in fact, the breach alleged in the letter is *not* something FMC here *did* remedy because the contract term had not expired at the time of the demand). As

such, OJC's threat lacked the hallmarks of *bona fide* complaints covered by the retaliation provision. *See* Statement on Retaliation at 7.

To take the focus off OJC's baseless threat, FMC worries that "HSDG's argument would empower carriers to unilaterally make determinations about shipper complaints" or would require FMC to "defer" to carriers' judgments about a complaint's merit. FMC Br. 29. Not so. Throughout federal law, objectively unreasonable complaints aren't protected activity. *See, e.g.*, *George v. Leavitt*, 407 F.3d 405, 417 (D.C. Cir. 2005) (Title VII); *Golden v. Management & Training Corp.,* 266 F. Supp. 3d 277, 284 (D.D.C. 2017) (ADEA). Here, the precise conduct discussed in the letter is not a violation of the Act nor even reasonably viewable as one. As a matter of law, OJC's unfounded, tacked-on threat to complain about conduct that the Act doesn't arguably prohibit is not protected activity.

On this point, FMC misconstrues the record. Contrary to FMC's assertion, Pump did not "confirm[] that it is 'clearly understood in the organization'" that "simply threatening to complain to the Commission, as opposed to filing a complaint, was protected against retaliation." FMC Br. 28. Pump discussed a party hypothetically *filing a lawsuit*, not threatening to file a meritless FMC complaint. See JA404 (ALJ Dec. 22) ("I do

not remember whether we had that specific example, ***meaning, a lawsuit***. But it is clearly understood in the organization that this is not a factor in the decision whether or not to negotiate a service contract.") (emphasis added). FMC also relies on Gast and Casanova's reactions to OJC's demands, FMC Br. 28, but neither stated that they believed OJC had a basis for complaining to FMC, as opposed to a breach of contract. In any event, neither Gast nor Cassanova are lawyers who should be used as a indication of whether OJC's threats had a legal basis.

### 2. HSDG did not fail to provide "cargo space accommodations when available."

HSDG provided OJC cargo space in 2021–2022 at market rates. Nonetheless, FMC held that HSDG failed to provide "cargo space accommodations when available" when HSDG failed to sign a 2021–2022 service contract. 46 U.S.C. § 41104(a)(3) (2021). That holding lacks merit. A service contract is, at most, a right to carriage, not a right to available space, so refusing a contract does not necessarily refuse "cargo space accommodation." 46 U.S.C. § 40102(21).

FMC does not address the distinction but relies entirely on its findings that HSDG refused OJC cargo space *in 2020–2021* and that HSDG entered service contracts with other shippers *in 2021–2022*. *See* FMC

Br. 30–31. These are non sequiturs. HSDG gave OJC cargo space in both 2020–2021 and 2021–2022, and there is no evidence of particular available cargo space that HSDG refused to OJC in 2021–2022.

## IV. FMC's reparations award was arbitrary, capricious, and contrary to law.

### A. OJC did not carry its burden.

OJC failed to prove damages "to a reasonable degree of certainty." *MAVL Capital Inc. v. Marine Transport Logistics, Inc.*, No. 16-16, 2022 WL 2209421, at *3 (FMC June 10, 2022). OJC relied almost exclusively on a made-for-litigation spreadsheet. *See* JA1222 (Weiss Ex. 101). That was not a business record—it was prepared for litigation—and included data points and assumptions that FMC found unsupported. JA1192–1196 (RX1155–1159); JA48 (Dec. 42). And, HSDG wasn't given *any* of the documentation or data OJC used to create the spreadsheet. *See* JA1192–1196 (RX1155–1159).[9]

9 FMC claims that HSDG should have attacked specific data points in the spreadsheet because it "shipped 238 of the 737 containers in OJC's spreadsheet." FMC Br. 38–39. But that doesn't excuse OJC's inability to produce the underlying data, and still leaves HSDG unable to understand or attack the spreadsheet's assertions about the other 499 containers, let alone OJC's unsupported estimation of its "profits per container."

FMC doesn't dispute that, in court, the spreadsheet would be inadmissible. That should upend the reparations award, for FMC previously held that reparations must be proved with the same degree of certainty as courts required. *See California Shipping Line, Inc. v. Yangming Marine Transport Corp.*, 1990 WL 427466, at *24. FMC tries to fall back on its "more liberal" standards of evidence, *see* FMC Br. 37 (citing 81 Fed. Reg. 93831), but if a made-for-litigation spreadsheet unsubstantiated by underlying data is not reliable for a court, it cannot be "reliable" for FMC, 46 C.F.R. § 502.204.

FMC's approach to the spreadsheet is internally inconsistent as well. *See ANR Storage Co. v. FERC*, 904 F.3d 1020, 1024 (D.C. Cir. 2018). FMC fails to explain how it could find that some aspects of the spreadsheet are reliable when FMC found (and still admits) that many other aspects are not reliable. *See* FMC Br. 38–39. Likewise, FMC relies on OJC's unqualified expert to support the spreadsheet's accuracy, *see* FMC Br. 38, despite finding that same expert unable to validate OJC's damages, *see* JA49–50 (Dec. 43–44). These inconsistencies render FMC's reliance on the spreadsheet arbitrary.

### B. FMC arbitrarily held that OJC was entitled to lost profits based on a hypothetical 2021–2022 service contract with a 400 FFE minimum volume.

FMC's basing reparations on a *hypothetical* 400 FFE contract is not reflective of OJC's "*actual* injury." 46 U.S.C. § 41305 (2021) (emphasis added). OJC shipped only 143 FFEs during 2021–2022. JA61 (Dec. 55). Moreover, FMC had no basis for disagreeing with the ALJ and concluding that the parties would have doubled their contractual obligation in 2021–2022 when HSDG was unable to meet its previous obligation of 200 FFEs, *see* JA1039 (RX 993), and when OJC never committed to a particular MQC for a 2021–2022 contract, JA751 (CX217).

FMC admits that 400 FFEs "is an estimate" and claims it is allowed to base reparations on estimates under *Bigelow v. RKO Pictures, Inc.*, 327 U.S. 251, 263–266 (1946). FMC is wrong. *Bigelow* teaches that a fact-finder "may not render a verdict based on speculation or guesswork." *Id.* at 264–265. Furthermore, *Bigelow* correctly prohibits estimates when the underlying statute bases damages on "the victim's actual, provable loss." *United States v. Fair*, 699 F.3d 508, 515 (D.C. Cir. 2012).

In support of its 400 FFE estimate, as well as its refusal to subtract actual shipments from that estimate, FMC points to Casanova's internal emails projecting increased volume and OJC's projections of increased

demand. *See* FMC Br. 40–41. Those do not rationally support FMC's 400 FFE estimate. Casanova's draft contract was, undisputedly, never approved by HSDG decisionmakers, and her placeholder numbers are not indicative of the parties' expectations. *See* Resp. Br. 15–16. And, as FMC itself found, OJC's past performance and projections were consistently exaggerated. *See* Resp. Br. 10–11. Finally, there is no evidence whatsoever that OJC's actual shipments would have been made "in addition to service contract shipments, not instead of them." FMC Br. 41. FMC, in short, lacked a rational basis for calculating reparations.

### C. Punitive reparations are arbitrary and capricious.

Punitive reparations, let alone the *maximum* amount available, are unjustified. *See* 46 U.S.C. § 41305(c). FMC arbitrarily ignored many relevant factors. FMC's responses are meritless and do not support the unprecedented award of punitive reparations.

First, FMC fails to explain why it could disregard that HSDG has no "history of prior offenses." 46 C.F.R. § 502.603(b). FMC assertion that "a cursory search of the Commission's docket shows cases involving Maersk" is obviously irrelevant. FMC Br. 43. Maersk and HSDG were separate entities at the relevant time.

Second, FMC fails to credit that this case raised "novel legal issue[s]." JA36 (Dec. 30). To distract from this legal argument, FMC claims that HSDG admitted that its actions clearly violated the Act. FMC Br. 43. FMC misconstrues the evidence it cites. As discussed above, Pump's testimony referred to retaliating against a shipper who filed a lawsuit. *See* JA404 (ALJ Dec. 22). Gast and Casanova are not lawyers and weren't equipped to evaluate whether HSDG's actions violated the Shipping Act, nor did they claim to. None of them admitted HSDG's liability.

Third, FMC doesn't really try to explain why maximum punitive reparations are warranted when HSDG continued to carry OJC's cargo. FMC claim that HSDG did not "ship in a reasonable manner" for OJC, FMC Br. 44, doesn't cut it. That is a prerequisite for finding liability, not a justification for a punitive sanction, let alone the maximum one.

# CONCLUSION

For any of the foregoing reasons, the FMC's order should be reversed.

Respectfully submitted,

/s/ Bryan Killian

Bryan Killian
Brendan J. Anderson
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C. 20004
T: 202-739-3000
bryan.killian@morganlewis.com

April 2, 2026

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of this Court's March 19, 2026 Order because it contains 5,626 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1).

This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word 365 in Century 14-point font, a proportionally spaced typeface.

/s/ Bryan Killian