No. 25-1179

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Hamburg Sudamerikanische
Dampfschifffahrts-Gesellschaft
A/S & Co. KG, *et al.*,
*Petitioner,*
v.

Federal Maritime Commission and
United States of America,
*Respondents.*

OJ Commerce, LLC,
*Respondent-Intervenor*
____________________________________/

On petition for review of orders of the Federal Maritime Commission

**BRIEF OF INTERVENOR**
**OJ COMMERCE LLC**
(oral argument not scheduled)


Shlomo Y Hecht
DC Circuit Bar No. 66397
Shlomo Y Hecht PA
3076 N Commerce Pkwy
Miramar, FL 33025
954-861-0025
sam@hechtlawpa.com
*Counsel for Intervenor OJ Commerce LLC*

## <u>CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES</u>

Pursuant to D.C. Circuit Rule 28(a)(1), Intervenor submits the following:

### A. Parties, Intervenors, and Amici

The parties to this proceeding are:

1. Petitioners

Hamburg Sudamerikanische Dampfschifffahrts-Gesellschaft A/S & Co. KG

Hamburg Sud North America, Inc.

Maersk A/S as successor in interest to Hamburg Sudamerikanische Dampfschifffahrts-Gesellschaft A/S & Co. KG

Maersk Agency USA, Inc., as successor in interest to Hamburg Sud North America, Inc.

2. Respondents

Federal Maritime Commission

United States of America

3. Intervenor for Respondent

OJ Commerce, LLC

### B. Rulings Under Review

*Order Affirming Initial Decision*, FMC Docket No. 21-11 (Federal Maritime Commission, issued on August 27, 2024)

### C. Related Cases

Intervenor is unaware of any cases related to the current consolidated case.

Dated: April 3, 2026

Respectfully submitted,

*/s/ Shlomo Y Hecht*
Shlomo Y Hecht
DC Circuit Bar No. 66397
Shlomo Y Hecht PA
3076 N Commerce Pkwy
Miramar, FL 33025
954-861-0025
sam@hechtlawpa.com
*Counsel for Intervenor OJ Commerce LLC*

## **INTERVENOR'S CORPORATE DISCLOSURE STATEMENT**

Intervenor OJ Commerce, LLC states that it is a limited liability company organized under the laws of Delaware, with its principal place of business in Miramar, Florida. No publicly traded company or corporation has an interest in the Intervenor OJ Commerce, LLC. Pursuant to the requirement of Circuit Rule 26.1(b) that Intervenor provides a statement of its general nature and purpose as relevant to the litigation, Intervenor states that it is an e-commerce retailer that, among other business, imports household and other consumer goods for sale in the United States.

Dated: April 3, 2026

Respectfully submitted,

*/s/ Shlomo Y Hecht*

Shlomo Y Hecht
DC Circuit Bar No. 66397
Shlomo Y Hecht PA
3076 N Commerce Pkwy
Miramar, FL 33025
954-861-0025
sam@hechtlawpa.com
*Counsel for Intervenor OJ Commerce, LLC*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... vi

GLOSSARY .......... vii

STATEMENT OF JURISDICTION / STANDING .......... ix

SUMMARY OF THE ARGUMENT .......... 1

ARGUMENT .......... 3

I. Hamburg's April 29 Executive Directive Establishes Knowing and Willful Retaliation and Refusal to Deal .......... 3

II. Hamburg Knew the Prohibition and Acted Anyway .......... 3

III. Hamburg's Shifting, Post-Hoc Explanations Confirm Pretext .......... 4

IV. The 92.5% Figure Ignores the Directive .......... 5

V. Hamburg's Contemporaneous Contracting of 25,402 TEUs on the Same Lane Proves Capacity Was Never the Reason .......... 6

VI. Hamburg's Damages Challenge Does Not Undermine the Record .......... 7

CONCLUSION STATING RELIEF SOUGHT .......... 8

CERTIFICATE OF COMPLIANCE .......... 10

CERTIFICATE OF SERVICE .......... 10

## TABLE OF AUTHORITIES

*None Included*

## GLOSSARY

| | |
|---|---|
| ALJ | Chief Administrative Law Judge of the Federal Maritime Commission Erin Wirth |
| APA | Administrative Procedure Act |
| Commission or FMC | Federal Maritime Commission |
| Denial | The Commission's Denial of OJ Commerce, LLC's Petition for Reconsideration dated June 27, 2025 |
| FFE | Forty-Foot Equivalent shipping container |
| Hamburg | Term to collectively refer to Hamburg Sudamerikanische Dampfschifffahrts-Gesellschaft A/S & Co. KG; Hamburg Sud North America, Inc.; Maersk A/S as successor in interest to Hamburg Sudamerikanische Dampfschifffahrts-Gesellschaft A/S & Co. KG; and Maersk Agency USA, Inc., as successor in interest to Hamburg Sud North America, Inc. |
| I.D. | The ALJ's Initial Decision dated June 7, 2023 |
| MQC | A Minimum Quantity Commitment ("MQC") is a mutual agreement between shippers (such as OJ Commerce, LLC) and carriers (such as Hamburg) of a volume threshold that is shipped over a fixed contract period. https://www.freightcourse.com/minimum-quantity-commitment/ (last accessed Dec. 23, 2025). |

| | |
|---|---|
| OJC | OJ Commerce, LLC (The abbreviation "OJC" was used throughout the FMC proceeding by the Commission and the parties.) |
| Order or Final Decision | The Commission's Order Affirming Initial Decision dated August 27, 2024. |
| Petition | OJ Commerce, LLC's Verified Petition for Reconsideration dated September 26, 2024 |
| TEU | Twenty-Foot equivalent unit shipping container |
| TPEB | Trans-Pacific East Bound, shipments from Asia to North America. JA836, 128:8-14. |

## **STATEMENT OF JURISDICTION / STANDING**

Petitioners have sought review of final orders of Respondent Federal Maritime Commission, reviewable in this Court under the Hobbs Administrative Orders Review Act, 28 U.S.C. §§ 2342(3)(B), 2344. The orders awarded and pertained to money reparations awarded to Intervenor OJ Commerce, LLC, making its standing self-evident. This Court also granted Intervenor OJ Commerce, LLC's motion for leave to intervene on November 6, 2025. (Document #2144113.)

## SUMMARY OF THE ARGUMENT

This case turns on Hamburg's own contemporaneous, unambiguous directive, which Hamburg attempts to avoid entirely in its Petition.

On April 28, 2021, OJ Commerce, LLC ("OJC") threatened "legal action against [Hamburg] and your affiliates, as well as the filing of a petition to the Federal Maritime Commission to seek relief." JA743–745. The next morning, Hamburg's Senior Vice President Juergen Pump was informed:

> Long story short, they are threatening us on liquidated damage against the space that we couldn't provide under committed 200 FFE MQC. JA754.

He responded with what the Commission found to be the operative "executive decision":

> Fully agree. We should not engage in any renewal discussions with customer **in light of the potential litigation**. I would also not provide them with space under the existing contract. JA754 (emphasis added).

That same day, the directive was implemented: "Please disengage on renewal negotiation with this account." JA747. The Commission found that directive triggered unlawful retaliation and refusal to deal. JA413, 415, 424; JA25, 28.

The directive stated its reason. Disengagement occurred "in light of the potential litigation." The record further reflects that Mr. Pump was "familiar with the Shipping Act's prohibition against retaliation," and that it was "clearly understood in the organization" that litigation threats could not be used as a basis for

refusing to negotiate. JA51; JA649. Hamburg's own risk manager warned that the company faced "a very bad case…which we will likely lose," and that "actual damages would of course be a significantly higher amount." JA695; JA763. Based on these facts, the Commission concluded the violation was knowing and willful. JA51–53.

After this directive was uncovered, Hamburg attempted to rewrite history. Internally, the reason was litigation. Externally, Hamburg invoked space constraints. JA981. As with Ms. Casanova's concocted "shifting explanations for [Hamburg's] decision to retaliate,"[1] the pattern here is not one of innocent misunderstanding. Nonetheless, in this Court, Hamburg advances additional after-the-fact pretexts—misunderstanding, lack of knowledge, aggregate performance percentages, and attacks on OJC's damages evidence. Pet. Br. at 14–15, 46, 55. None of these excuses appears in the April 29 directive.

The Commission relied on Hamburg's contemporaneous language, sworn testimony, compliance training, internal warnings, and contracting conduct—including service contracts totaling 25,402 TEUs after OJC was cut off. JA35; JA392, ¶29 (citing JA864). Substantial evidence supports its findings against Hamburg. The Petition should be denied.

---

[1] *See* FMC Br. at 43 ("Ms. Casanova concocted shifting explanations for HSDG's decision to retaliate in order to hide the real reasons." *See* JA13, 17-18.)

## ARGUMENT

### I. Hamburg's April 29 Executive Directive Establishes Knowing and Willful Retaliation and Refusal to Deal

Hamburg's Petition discusses the April 29 "executive decision" email chain on page 15 but omits its operative language. It does not quote "in light of the potential litigation." It does not quote "I would also not provide them with space under the existing contract." It does not quote "Please disengage on renewal negotiation with this account."

Instead, Hamburg recasts the directive as "a perfectly reasonable business decision" triggered by a subordinate's "misstatement." Pet. Br. at 15. That sanitized account of confusion and routine business judgment depends on omitting the very dispositive words that plainly illustrate Hamburg's willful violations of the Shipping Act. Hamburg does not offer competing readings of ambiguous evidence; Hamburg's contentions are irreconcilable narratives. When the actual language of JA754 is placed alongside Hamburg's description of it, the omission speaks for itself. The central document in this case says what it says—and it confirms that Hamburg's decision was to retaliate and refuse to deal for an unlawful reason.

### II. Hamburg Knew the Prohibition and Acted Anyway

Hamburg nevertheless asserts that Mr. Pump was "not previously knowing about OJC's threats." Pet. Br. at 15. But the contemporaneous record says the opposite. The directive was issued by Mr. Pump, the executive who acknowledged

his understanding of the rule. Mr. Pump knew his decision violated the Shipping Act. When asked at his deposition whether a customer's threat of legal action could be a lawful reason to refuse service, he testified: "It is clearly understood in the organization that this is not a factor in the decision whether or not to negotiate a service contract." JA51. He further confirmed that he was "familiar with the Shipping Act's prohibition against retaliation." *Id.*

Hamburg's own internal communications further reflect clear awareness of legal exposure. Its risk manager, Michael Gast, warned that this was "a very bad case" Hamburg would "likely lose." JA695. He further acknowledged that "actual damages would of course be a significantly higher amount." JA763. These were candid internal assessments of liability risk. The Commission relied on these admissions in concluding that Hamburg acted knowingly and willfully. JA51-53.

Awareness of threatened legal action and substantial damages came first. The directive to disengage and withhold space followed. That timeline is dispositive.

## III. Hamburg's Shifting, Post-Hoc Explanations Confirm Pretext

The contemporaneous record is fixed. The explanations that followed are not. Internally, the reason was explicit: disengagement "in light of the potential litigation." JA754. Externally, on May 4, a different explanation was communicated: space constraints. JA981.

The Commission found that "the reasons provided by Hamburg to OJC did

not match the reasons Hamburg discussed internally." JA412. It concluded that the logistics rationale was pretextual. JA28, 53. In this Court, Hamburg advances yet more excuses:

- That Mr. Li "mistakenly stated" OJC's proposal and that Mr. Pump found it "not a reasonable starting position." Pet. Br. at 15.
- That Mr. Pump was "not previously knowing about OJC's threats." *Id.*
- That Hamburg transported "92.5% of the agreed-upon amount," and that "in no universe is it fair" to characterize its conduct as refusing to deal. Pet. Br. at 14, 46.

None of these post-hoc pretexts appears in the April 29 directive. The Commission was entitled to credit what Hamburg wrote before litigation strategy intervened, what its executives admitted under oath, and what its contracting conduct demonstrated—including commitments totaling 25,402 TEUs after OJC was cut off. JA35. Substantial evidence supports the Commission's determination that the contemporaneous reason controls.

## IV. The 92.5% Figure Ignores the Directive

Hamburg contends that it "transported 92.5% of the agreed-upon amount," asserting that "in no universe is it fair" to characterize its conduct as refusing to deal. Pet. Br. at 14, 46. That percentage conflates months of pre-directive performance with post-directive conduct. And it entirely misses the point.

Hamburg's refusal to provide space for OJC's remaining shipments was not a routine shortfall or attributable to COVID. Hamburg's cutting off of all further performance was a deliberate decision triggered by OJC's legal threat. Mr. Pump was informed OJC needed 18 additional FFE for its contract to be fulfilled. He was told space was available. He nevertheless refused to provide it "in light of the potential litigation." JA754–755; JA25.

The conduct at issue is not the existence of earlier shipments, but the decision that followed. The Commission correctly focused on Hamburg's actions after the directive and on the rationale it offered for those actions. Substantial contemporaneous evidence supports the finding that Hamburg withheld space in retaliation for OJC's stated intent to file a complaint with the Commission. If the percentage of shipments Hamburg handled prior to Mr. Pump's executive decision shows anything, it underscores the stark contrast between Hamburg's conduct before and after that turning point.

## V. Hamburg's Contemporaneous Contracting of 25,402 TEUs on the Same Lane Proves Capacity Was Never the Reason

As of April 27, 2021, Hamburg was pressing to finalize OJC's contract. JA865 ¶11; JA737. OJC's account was labeled a "100% P1 opportunity" and placed on the "target list." JA837, 134:3-135:17; JA737; JA752. Ms. Casanova described OJC as "willing to commit to much more." JA749; JA63.

Yet after cutting off OJC, Hamburg proceeded to execute service contracts for

25,402 TEUs on the same trade lane—volumes dwarfing the 400 FFE, and even the 4,200-4,700 FFE, under discussion with OJC. JA392, ¶29 (citing JA864); JA35. That sequence is irreconcilable with a genuine capacity constraint. A carrier that truly lacks space does not, within the same window, allocate tens of thousands of TEUs elsewhere. The Commission properly relied on this contemporaneous contracting activity to reject Hamburg's asserted justification. JA13, 17-18, 53.

The record thus confirms what the documents plainly stated: OJC was not cut off because Hamburg lacked space, but because Hamburg chose to provide it to others who did not threaten to complain to the Commission. The FMC's conclusion rests on substantial evidence and should be affirmed.

## VI. Hamburg's Damages Challenge Does Not Undermine the Record

Hamburg attacks Mr. Berning, OJC's damages expert, as "no true expert," limited to "valuing corporations in divorce proceedings." Pet. Br. at 55. But the ALJ qualified Mr. Berning as an expert based on his credentials as a CPA, Certified Valuation Analyst, and Certified in Financial Forensics. JA426.

Moreover, the Commission relied primarily on OJC's actual business data—containers shipped, revenues earned, and costs incurred. JA45-47. Hamburg further misrepresents the origin of the data. Mr. Berning testified that the records "come directly from the company's accounting and other systems," encompassing OJC's operational infrastructure, accounting software, and enterprise records. JA1128–

1129. Hamburg truncated this quotation, stating only that the data "comes from OJC's computers." Pet. Br. at 55. This misrepresentation implies the data were unverified, when in fact they are the records OJC relies on to run its business. Hamburg also conflates the format—a litigation spreadsheet—with the substance—the underlying operational records that predate the dispute—which forms the basis of its entire evidentiary attack. Tellingly, Hamburg did not challenge the underlying operational data points. JA45-48.

The Commission reviewed that evidence, weighed Hamburg's criticisms, and credited the record it found reliable. Substantial evidence supports the Commission's damages determination, and Hamburg's attempt to diminish the messenger does nothing to undermine the message.

## CONCLUSION STATING RELIEF SOUGHT

This case turns on what Hamburg wrote before litigation strategy intervened. An executive directive disengaged from OJC "in light of the potential litigation." JA754. The Commission found that directive constituted unlawful retaliation and refusal to deal. JA413, 415, 424; JA25, 28.

The executive who issued that directive acknowledged he knew retaliation was prohibited. JA51. Hamburg's own risk manager warned internally that it faced "a very bad case" it would "likely lose." JA695. After the directive was issued, alternative explanations emerged. None appears in the directive itself.

The Commission credited the contemporaneous record, sworn testimony, and objective contracting conduct—including commitments totaling 25,402 TEUs after OJC was cut off. JA35.

Hamburg asks this Court to ignore the plain language of its own documents, disregard its executive's admissions, and substitute a rewritten narrative for the plain record. The Court should decline that invitation. Substantial evidence supports its findings. Hamburg's Petition should be denied.

Dated: April 3, 2026

Respectfully submitted,

*/s/ Shlomo Y Hecht*
Shlomo Y Hecht
DC Circuit Bar No. 66397
Shlomo Y Hecht PA
3076 N Commerce Pkwy
Miramar, FL 33025
954-861-0025
sam@hechtlawpa.com

Velvel (Devin) Freedman
DC Circuit Bar No. 66760
FREEDMAN NORMAND FRIEDLAND LLP
1 SE 3rd Ave., Suite 1240
Miami, Florida 33131
vel@fnf.law
nbermond@fnf.law
*Attorneys for Intervenor OJ Commerce, LLC*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(e)(1) because this brief contains 2768 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1).

I further certify that this document complies with the type-face requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in Times New Roman 14-point font using Microsoft Word.

Dated: April 3, 2026 By: */s/ Shlomo Y. Hecht*
Shlomo Y. Hecht

## CERTIFICATE OF SERVICE

I certify that on April 3, 2026, I filed the foregoing Brief for Intervenor OJ Commerce, LLC with the Clerk of the United States Court of Appeals for the D.C. Circuit via the CM/ECF system, which will notify all participants in this case who are registered CM/ECF users.

Dated: April 3, 2026 By: */s/ Shlomo Y. Hecht*
Shlomo Y. Hecht